556 So.2d 1104 (1990)
STATE of Florida, Appellant,
v.
David DAVIS, Appellee.
No. 75128.
Supreme Court of Florida.
February 15, 1990.
*1105 Robert A. Butterworth, Atty. Gen., and David G. Guest and Jonathan A. Glogau, Asst. Attys. Gen., Tallahassee, and Parker D. Thomson, Sp. Asst. Atty. Gen., of Thomson, Muraro, Bohrer & Razook, Miami, for appellant.
J. Patrick Floyd of the Law Offices of J. Patrick Floyd, P.A., Port St. Joe, for appellee.
James C. Adkins, Leonard A. Carson, John D.C. Newton, II and Lu Ann Snider of Carson & Linn, P.A., Tallahassee, amicus curiae for Concerned Shrimpers of America, Inc.
Winston K. Borkowski of Owens & Storch, Daytona Beach, amicus curiae for Greenpeace-U.S.A. and The Environmental Defense Fund.
David Gluckman of Gluckman and Gluckman, Tallahassee, amicus curiae for The Center for Marine Conservation, Florida League of Anglers, Florida Audubon Soc., National Wildlife Federation and Florida Wildlife Federation.
BARKETT, Justice.
We have for review an order of the County Court in and for Franklin County, Florida, which certified to the First District Court of Appeal the following question of great public importance:
Does the Florida Marine Fisheries Commission have the statutory authority to promulgate rules requiring the use of turtle excluder devices in shrimp nets in order to protect endangered and threatened Florida sea turtles?[[1]]
For the reasons expressed below, we answer the question in the affirmative, finding that the Marine Fisheries Commission ("Commission") acted within the ambit of its statutory authority. We reverse the judgment of the county court, which held to the contrary.
Responding to what it perceived as an "immediate danger to the public welfare," 15 Fla. Admin.W. 3608, 3609 (Aug. 18, 1989); id. at 5148 (Nov. 3, 1989), the Commission instituted emergency rule 46ER89-3 pursuant to the authority vested in the Commission by sections 370.025 and 370.027 of the Florida Statutes (1987). The rule requires persons operating fishing trawls or possessing trawls rigged for fishing aboard a vessel at least twenty-five feet in length to have qualified turtle excluder devices (TEDs) installed in such trawls. Vessels smaller than twenty-five feet in length using trawls would be permitted either to reduce tow times to ninety minutes or to use TEDs. The rule became effective August 9, 1989.
On August 10, 1989, the Marine Patrol cited appellee, David Davis, with possessing a trawl rigged for fishing that did not have a qualified TED installed, in violation of emergency rule 46ER89-3(2).[2] Davis filed a motion in the county court to dismiss the charge. On November 27, the county court granted the motion on the ground that the Commission exceeded its statutory authority by implementing emergency rule 46ER89-3.
The state of Florida appealed the county court's order to the district court, which accepted jurisdiction but did not rule on the merits. Instead, pursuant to Florida Rule of Appellate Procedure 9.125, the district court certified the issue to this Court as one of great public importance requiring immediate resolution. We accepted jurisdiction to resolve the issue.[3]
The gravamen of Davis' initial argument is that the Commission's rule constitutes an invalid exercise of delegated legislative authority because section 370.027 prohibits any action by the Commission pertaining to endangered species. Since sea turtles are considered to be "endangered,"[4] and since *1106 the purpose of the rule requiring TEDs is to protect sea turtles, Davis argues that the rule is invalid. We cannot read section 370.027 as Davis urges.
"While legislative intent controls construction of statutes in Florida, that intent is determined primarily from the language of the statute. The plain meaning of the statutory language is the first consideration." St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982) (citations omitted). Thus, we must examine the plain meaning of the language in section 370.027, which provides in pertinent part as follows:
(1) Pursuant to the policy and standards in s. 370.025, the Marine Fisheries Commission is delegated full rulemaking authority over marine life, with the exception of endangered species, subject to final approval by the Governor and Cabinet sitting as the head of the Department of Natural Resources, in the areas of concern herein specified....
(2) Exclusive rulemaking authority in the following subject matter areas relating to marine life, with the exception of endangered species, is vested in the commission... .
(a) Gear specifications;

(b) Prohibited gear;
(c) Bag limits;
(d) Size limits;
(e) Species that may not be sold;
(f) Protected species;
(g) Closed areas, except for public health purposes;
(h) Quality control, except for oysters, clams, mussels, and crabs;
(i) Seasons; and
(j) Special considerations relating to egg-bearing females.
(Emphasis supplied.)
We find that a plain reading of section 370.027 does not preclude the Commission from establishing rules that might impact upon endangered species. Rather, the plain import of the reference to "endangered species" is to modify the Commission's otherwise "full" and "exclusive" rulemaking authority relating to all marine life. The statute does not say that the Commission cannot act at all with reference to endangered species; it says that the Commission is not the only agency permitted to act with reference to endangered species. Moreover, a TED is a shrimping gear specification. Clearly the Commission has the authority to regulate gear specifications. Thus, we are persuaded that the Commission's rulemaking power is circumscribed only by the requirement in the statute that the Commission act reasonably pursuant to the policy and standards in section 370.025.
Section 370.025 provides as follows:
(1) The Legislature hereby declares the policy of the state to be management and preservation of its renewable marine fishery resources, based upon the best available information, emphasizing protection and enhancement of the marine and estaurine environment in such a manner as to provide for optimum sustained benefits and use to all the people of this state for present and future generations.

(2) All rules relating to saltwater fisheries adopted by the department pursuant to this chapter or adopted by the Marine Fisheries Commission and approved by the Governor and Cabinet as head of the department shall be consistent with the following standards:
(a) The paramount concern of conservation and management measures shall be the continuing health and abundance of the marine fisheries resources of this state.
(b) Conservation and management measures shall be based upon the best information available, including biological, sociological, economic, and other information deemed relevant by the commission.
(c) Conservation and management measures shall permit reasonable means and quantities of annual harvest, consistent with maximum practicable sustainable stock abundance on a continuing basis.
(d) When possible and practicable, stocks of fish shall be managed as a biological unit.

*1107 (e) Conservation and management measures shall assure proper quality control of marine resources that enter commerce.

(f) State marine fishery management plans shall be developed to implement management of important marine fishery resources.

(g) Conservation and management decisions shall be fair and equitable to all the people of this state and carried out in such a manner that no individual, corporation, or entity acquires an excessive share of such privileges.
(h) Federal fishery management plans and fishery management plans of other states or interstate commissions should be considered when developing state marine fishery management plans. Inconsistencies should be avoided unless it is determined that it is in the best interest of the fisheries or residents of this state to be inconsistent.
(Emphasis supplied.)
Davis argues that sea turtles cannot be considered "renewable marine fishery resources" within the meaning of subsection (1) because sea turtles are not fish, and they have not been harvested since 1973. We find these distinctions inapplicable. The concept embodied in the term "renewable marine fishery resources" is a far broader concept than Davis would have us hold.
First, the plain language of the statute goes beyond the classification of "fish," extending the legislative policy to the protection of "marine fishery resources." The statute was expressly designed to emphasize protection and enhancement of the "marine and estuarine environment," of which sea turtles are a part. Second, the legislature did not clearly limit the phrase "benefits and use" in subsection (1) to mean only the harvest of marine life. Although harvest may be a major concern of the statute, the phrase "optimum sustained benefits and use to all the people of this state for present and future generations" reasonably could include the study, observation, recording, and other enjoyment of marine life. Third, even if the legislature's only concern in section 370.025 was harvesting, the statute does not require that "renewable marine fishery resources" be currently harvested to fit within the Commission's rulemaking authority. Sea turtles have been harvested in the past and may be harvested in the future if the various species are allowed to survive and multiply. The Commission cannot comply with the legislative mandate to provide optimum benefits to all the people for "present and future" generations if it does not have the power to restore a fishery resource that has failed because of overfishing, habitat loss, or pollution. It cannot manage a species for "future" generations if it does not have the authority to assist in the recovery of that depleted species. The common sense meaning of the term "renewable" supports this conclusion. Likewise, the term "resources" is a broad one clearly encompassing all marine life and its habitat. Accordingly, the Commission has the power under sections 370.027 and 370.025 to protect and recover marine resources through fishing gear regulations just as it has the power to do so through season closures, bag limits, or fishery management plans.
Moreover, we cannot accept Davis' argument that legislative policy was contravened by the emergency rule in light of overwhelming evidence to the contrary. Florida law makes clear that the protection of the environment, including all forms of marine life, is a primary policy of the people and the legislature of Florida. For example, article II, section 7 of the Florida Constitution, provides that "[i]t shall be the policy of the state to conserve and protect its natural resources and scenic beauty." (Emphasis supplied.)[5] The Florida Statutes also are replete with provisions designed to protect the state's invaluable and inestimable natural resources.[6]
*1108 The need to protect natural resources is most compelling when the survival of a species is in jeopardy. That is why the legislature has seen fit to provide special protections for species of fish and wildlife deemed to be endangered or threatened. In the Florida Endangered and Threatened Species Act of 1977, the legislature recognized that it is the policy of the state to "conserve and wisely manage" its "wide diversity of fish and wildlife" resources "with particular attention to those species defined ... as being endangered or threatened. As Florida has more endangered and threatened species than any other continental state, it is the intent of the Legislature to provide for research and management to conserve and protect these species as a natural resource." § 372.072(2), Fla. Stat. (1987). A further expression of policy is found in subsections 370.021(2)(c)(5)(d)(h) of the Florida Statutes (1987), in which the legislature imposed enhanced penalties for taking, harvesting, or possessing sea turtles that belong to certain enumerated threatened or endangered species. See also § 370.12(1), Fla. Stat. (1987) (protection of marine turtles, nests, and eggs).
Sections 370.025 and 370.027 must be read in light of the clear intent and policy of the legislature to protect threatened or endangered species of sea turtles. It is consistent with legislative policy to conclude that endangered or threatened species of sea turtles are "renewable marine fishery resources." That would preserve the turtles "for sustained benefits and use to all the people of this state for present and future generations," whether for catching, taking, studying, observing, recording, photographing, or other lawful purposes. It would be inconsistent with legislative policy to conclude, as the county court did, that the Commission has no authority to make shrimp trawling rules that protect threatened or endangered species of sea turtles. It is far more likely that the Commission's rulemaking authority is limited by statute to prevent the Commission from enacting rules that allow the taking or harvesting of endangered species of sea turtles. Furthermore, common sense dictates that the Commission may consider environmental concerns when it implements rules regulating shrimp trawling.
We answer the certified question in the affirmative and reverse the judgment of the county court. Our decision renders moot the state's motion for a stay of the judgment of the county court.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] State v. Davis, No. 89-663MM (Fla.Franklin Cty.Ct. Nov. 29, 1989).
[2] Emergency rule 46ER89-3(2) provides:

No person shall possess, aboard any vessel 25 feet or greater in length in offshore waters of the state, any trawl rigged for fishing that does not have a qualified turtle excluder device (TED) installed therein.
The offense is punishable pursuant to the terms set forth in section 370.028 and 370.021 of the Florida Statutes (1987).
[3] We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution.
[4] The parties agree that four of the five species of sea turtles found in Florida offshore waters have been designated as "endangered," while the other has been designated as "threatened."
[5] See also article IV, section 9 of the Florida Constitution, which provides for the creation of the Game and Fresh Water Fish Commission, and directs that certain revenues "shall be appropriated to the commission by the legislature for the purpose of management, protection and conservation of wild animal life and fresh water acquatic life."
[6] See generally, e.g., chs. 370, 372, Fla. Stat. (1987).