GRIMES, Senior Justice.
The Attorney General has petitioned this Court for an advisory opinion as to the validity of an initiative petition submitted by a group called the Fish and Wildlife Conservation Committee. We have jurisdiction. Art. IV, § 10; art V, § 3(b)(10), Fla. Const. The petition reads as follows: .
TITLE: FISH AND WILDLIFE CONSERVATION COMMISSION: UNIFIES MARINE FISHERIES AND FRESH WATER FISH COMMISSIONS
SUMMARY: Unifies the Marine Fisheries Commission and the Game and Fresh Water Fish Commission to form the Florida Fish and Wildlife Conservation Commission; provides for Commission members and for Governor appointment and Senate confirmation thereof; authorizes the Commission to exercise executive and regulatory powers of the state pertaining to conservation of freshwater and marine aquatic life and wild animal life; allows for legislation in certain areas; provides for appropriations of license fees to Commission.
FULL TEXT OF PROPOSED AMENDMENT:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT:. ARTICLE IV, SECTION 9, FLORIDA CONSTITUTION, IS HEREBY AMENDED AS FOLLOWS:
Fish and Wildlife Conservation Commission
(a) The marine, freshwater and wildlife resources of the State of Florida belong to all of the people of the state and should be conserved and managed for the benefit of the state, its people and future generations.
(b)(1) There shall be a Fish and Wildlife Conservation Commission composed of seven (7) members appointed by the Governor subject to confirmation by the Senate for staggered terms of five (5) years. (2) Notwithstanding paragraph (b)(1), the initial members of the Commission shall be the members of the Game and Fresh Water Fish Commission and the Marine Fisheries Commission who are serving on either of those Commissions on the effective date of this amendment, who shall serve *1353 the remainder of their respective terms, and appointments to the Commission shall not be made unless and until all current terms of the members of the Game and Fresh Water Fish Commission. and the Marine Fisheries Commission have expired so that only seven (7) members of the Commission remain and, in that event, the governor shall appoint members of the Commission as the terms of the remaining seven (7) members expire.
(e) The Commission shall exercise the regulatory and executive powers of the state with respect to wild animal life, freshwater aquatic life, and marine aquatic life, except that all license fees for taking wild animal life, freshwater aquatic life and marine aquatic life, and penalties for violating regulations of the Commission shall be prescribed by specific statute. The Commission shall not be a sub-unit of any other state agency and shall have its own staff which includes management, research, enforcement and public information functions. The Legislature may enact laws in aid of the Commission, not inconsistent with this section. The Commission’s exercise of executive powers in the area of planning, budgeting, personnel management and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the Commission by the Legislature for the purpose of management, protection and conservation of wild animal life, freshwater aquatic life and marine aquatic life.
(d) If any portion of this section is held invalid for any reason, the remaining portion of this section, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
(e) This amendment shall take effect on the July 1 next occurring after approval hereof by vote of the electors of the State of Florida.
The scope of our review is limited to an examination of whether the amendment satisfies (1) the single-subject requirement of article XI, section 3, of the Florida Constitution and (2) the ballot title and summary requirements of section 101.161, Florida Statutes (1995).

SINGLE SUBJECT REQUIREMENT

Article XI, section 3 states in relevant part:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith.
Of the four methods described in article XI for amending or revising the constitution, see art. XI, §§ 1-4,[1] only the citizen initiative method in section 3 contains this single-subject requirement. This Court explained in Fine v. Firestone, 448 So.2d 984, 988 (Fla.1984), that the single-subject limitation exists because section 3 does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4. Accordingly, section 3 protects against multiple “precipitous” and “cataclysmic” changes in the constitution by limiting to a single subject what may be included in any one amendment proposal. In re Advisory Opinion to the Attorney General—Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). This rule of restraint also prevents the “logrolling” of separate issues into a single proposal, which might result in the passage of an unpopular issue simply because it is paired with a widely supported one. Id. As applied, the single-subject rule requires that a proposal possess a “oneness of purpose,” which includes a determination of whether the proposal affects a function of government as opposed to a section of the constitution. Fine, 448 So.2d at 990. A proposal that affects several branches of government will not automatical *1354 ly fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test. Save Our Everglades, 686 So.2d at 1340.
Examining the proposed amendment here, we are satisfied that it meets the single-subject requirement of article XI, section 3. Article IV, section 9, the subject of the proposed amendment, .currently states:
SECTION 9. Game and fresh water fish commission. — There shall be a game and fresh water fish commission, composed of five members appointed by the governor subject to confirmation by the senate for staggered terms of five years. The commission shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute. The legislature may enact laws in aid of the commission, not inconsistent with this section. The commission’s exercise of executive powers in the area of planning, budgeting, personnel management, and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the commission by the legislature for the purpose of management, protection and conservation of wild animal life and fresh water aquatic life.
The proposed amendment makes several additions, but it does not in our estimation substantially alter or perform the functions of multiple branches of government. Section (a) contains a statement of policy. Section (b)(1) provides for the number and selection of commission members. This section increases the number of members to seven but is otherwise the same as the current provision. Sections (b)(2) and (e) are housekeeping or administrative provisions governing the transition from the current provision to the new amendment if enacted. Section (d) adds a severability clause. All of these sections are logically connected to the key purpose of the amendment, which is contained in section (c).
Section (c) is the operative section, setting forth the powers and duties of the new commission.[2] The new Fish and Wildlife Conservation Commission would differ from the Game and Fresh Water Fish Commission in two substantive ways. First, the Fish and Wildlife Conservation Commission would assume authority over marine aquatic life, which through legislative delegation is currently regulated by the Marine Fisheries Commission, the Department of Environmental Protection, and the Department of Agriculture. See §§ 370.021(1), .026, .027; § 372.072(4)(a)2; § 581.185, Fla. Stat. (1995). Second, the amendment ensures that the new commission will be independent by specifying that it will not be a sub-unit of any other state agency and will have its own staff to perform management, research, enforcement, and public information functions.
Opponents liken the proposed amendment to the one we struck down in Save Our Everglades. In that case, we determined that the proposed amendment violated the single-subject rule because it would have resulted in the creation of a “virtual fourth branch of government with authority to exercise the powers of the other three on the subject of remedying Everglades pollution.” Id. at 1340. The amendment in this case is different. Unlike the initiative in Save Our Everglades, this one does not create a new entity where none exists. Rather, it builds upon an established constitutional entity, which already possesses the regulatory and executive powers of the state in the areas of wild animal life and freshwater aquatic life, by expanding that entity’s jurisdiction to cover marine aquatic life as well. The initiative does not bestow upon the renamed commission a government function that the existing one does not already have. While the initiative may affect more than one branch of government, we cannot say it substantially changes or performs the functions of multiple branches of government in violation of article *1355 XI, section 3. We are satisfied that in seeking to place the regulation of marine aquatic life under the auspices of the Game and Fresh Water Fish Commission to form one entity that governs all matters concerning wild animal life, fresh water aquatic life, and marine aquatic life, the proposed amendment has a oneness of purpose. No danger of logrolling is present.

TITLE AND SUMMARY

Section 101.161 describes the criteria for the ballot title and summary of a proposed constitutional amendment:
101.161. Referenda; ballots
(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, taxation and budget reform commission proposal, or enabling resolution or ordinance. The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
In Askew v. Firestone, 421 So.2d 151 (Fla.1982), this Court examined a proposed amendment to article II, section 8(e), that would remove the absolute two-year ban on certain lobbying activities by former legislators and statewide elected officers and replace the ban with a financial disclosure option. The proposed ballot summary accurately stated that the amendment would prohibit those officials from certain lobbying activities for two years after leaving office unless they filed public financial disclosure statements. Id. at 153. We nevertheless struck the ballot caption and summary from the ballot. We did so because the summary failed to also advise the public that section 8(e) already contained an absolute two-year ban on certain lobbying. Id. at 155. This omission in the summary left the impression that the amendment’s chief purpose was to impose restrictions on lobbying, when in reality the goal was to relax the existing ones.
In this case, the ballot summary accurately points out that the two commissions will be combined into one. However, as in Askew, the problem “lies not with what the summary says, but, rather, with what it does not say.” Id. at 156. The summary does not explain to the reader that the power to regulate marine life lies solely with the legislature, which has delegated that power to not only the Marine Fisheries Commission but also the Department of Environmental Protection and the Department of Agriculture.[3] Though the summary states that the purpose of the amendment is to “unify” the Marine Fisheries Commission with the Game and Fresh Water Fish Commission, those two entities do not share the same status. Despite the common label “commission,” the former is a legislative creation while the latter enjoys independent constitutional stature. Thus the proposed amendment does not unify the two so much as it strips the legislature of its exclusive power to regulate marine life and grants it to a constitutional entity. The summary does not sufficiently inform the public of this transfer of power.
Accordingly, because the ballot summary does not meet the requirements of section 101.161, the title, summary, and proposed text must be stricken from the ballot.
It is so ordered.
OVERTON, HARDING and WELLS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., and SHAW, J., concur.

. Article XI, section 1, sets forth the process for the legislature to propose by joint resolution an amendment of a section or revision of one or more articles, or the whole, of the constitution. Section 2 mandates a revision commission to meet every twenty years and authorizes it to present to the electorate revisions of the constitution. Section 4 authorizes the people of the State to call a constitutional convention to propose any revisions to the constitution.

. With the exception of the first sentence, which furnishes-the commission’s naipe and dictates the selection process and number of members, all of the existing language of article IV, section 9 is included within section (c) of the proposed amendment.

. Thus, if the amendment were passed, the legislature's determination that the Department of Environmental Protection should regulate endangered marine species would no longer be effective. § 370.027; § 372.072(4)(a)2, Fla. Stat. (1995).