838 So.2d 492 (2003)
CARIBBEAN CONSERVATION CORPORATION, INC., et al., Petitioners,
v.
FLORIDA FISH AND WILDLIFE CONSERVATION COMMISSION, et al., Respondents.
No. SC01-1885.
Supreme Court of Florida.
January 16, 2003.
*493 David Guest, Earthjustice Legal Defense Fund, Tallahassee, FL, for Petitioners.
*494 James V. Antista, General Counsel, on behalf of Fish and Wildlife Conservation Commission; and Thomas E. Warner, Solicitor General, T. Kent Wetherell, II, Deputy Solicitor General, and Matthew J. Conigliaro, Deputy Solicitor General, Office of the Solicitor General, Tallahassee, FL, on behalf of the Attorney General, for Respondents.
Gary V. Perko, Dan R. Stengle, and Gary P. Sams of Hopping, Green & Sams, P.A., Tallahassee, FL, for Marine Industries Association of Florida, Inc., Amicus Curiae.
WELLS, J.
We have for review a decision of a district court of appeal that expressly declares state statutes valid. Fla. Fish & Wildlife Conservation Comm'n v. Caribbean Conservation Corp., 789 So.2d 1053 (Fla. 1st DCA 2001). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we approve the decision of the First District Court of Appeal and hold that the statutes challenged by the petitioners are constitutional, except that portion of section 20.331(6)(c)(1), Florida Statutes (1999), that refers to marine species that are "of special concern."
The petitioners are not-for-profit groups and individuals[1] who allege that sections 20.331(6)(c); 370.025(4); and 370.12(1)(c)(3), (1)(h), (2)(g)-(i), 2(k)-(o), 2(p)(1), and 2(q), Florida Statutes (1999), unconstitutionally usurp the constitutional authority of the Florida Fish and Wildlife Conservation Commission (FWCC) to regulate marine life. The petitioners contend that the constitutional powers of the FWCC encompass all marine life without exception and that therefore the Legislature cannot lawfully restrict the FWCC's management or regulatory actions regarding any subclass of marine life. The focal issue arising from the petitioners' challenge is whether the Legislature can require the FWCC to comply with the requirements of the Administrative Procedure Act (APA), ch. 120, Fla. Stat., when adopting rules or regulations in respect to those species of marine life that are defined as endangered, threatened, or species of special concern. The petitioners contend that the Legislature cannot require the FWCC to comply with the APA in adopting and administering such rules and regulations. The FWCC and the Attorney General (respondents) disagree and argue that the Legislature can require the application of the APA and that the statutes are constitutional.

HISTORICAL BACKGROUND
In 1998, Florida voters amended the Florida Constitution by approving a revision proposed by the Constitutional Revision Commission that created the FWCC and abolished the Florida Game and Fresh Water Fish Commission (Game Commission) and the Marine Fisheries Commission (Marine Commission). The revision, known as revision 5, is presently article IV, section 9, and article XII, section 23 of the Florida Constitution.
Prior to the adoption of the revision 5 constitutional amendments, regulation of Florida's wild animal life, freshwater *495 aquatic life, and marine life was performed primarily by three separate agencies. These agencies were the Game Commission, the Marine Commission, and the Department of Environmental Protection (DEP).[2]
The Game Commission was a constitutional agency established by a 1942 constitutional amendment. See art. IV, § 30, Fla. Const. of 1885 (1942), amended by art. IV, § 9, Fla. Const. (1968). This constitutional provision authorized the Game Commission to carry out "the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life." Art. IV, § 9, Fla. Const. (1968).
The DEP was, and remains, a statutorily created agency which was established in 1993 by the merger of the then-existing Department of Environmental Regulation and Department of Natural Resources. With its creation, the DEP was given the statutory authority previously held by the Department of Natural Resources regarding "endangered and threatened" marine species. See ch. 93-213, § 3, Laws of Fla.; §§ 370.02(2), 370.12, 372.072(4)(a)(2), Fla. Stat. (Supp.1994).
The Marine Commission was created by statute in 1983. See ch. 83-134, § 1, Laws of Fla.; § 370.026, Fla. Stat. (1983). The Marine Commission was given jurisdiction over marine life with the express exception of "endangered species." § 370.027, Fla. Stat. (1983).[3] The statute also expressly *496 stated that "[A]ll administrative and enforcement responsibilities which are unaffected by the specific provisions of this act continue to be the responsibility of the department." § 370.027(1), Fla. Stat. (1983).
In 1990, the Court decided State v. Davis, 556 So.2d 1104 (Fla.1990), which concerned rules promulgated by the Marine Commission pertaining to gear specifications. We noted: "The gravamen of Davis' initial argument is that the [Marine] Commission's rule constitutes an invalid exercise of delegated legislative authority because section 370.027 prohibits any action by the Commission pertaining to endangered species." Davis, 556 So.2d at 1105. We rejected Davis's argument:
We find that a plain reading of section 370.027 does not preclude the Commission from establishing rules that might impact upon endangered species. Rather, the plain import of the reference to "endangered species" is to modify the Commission's otherwise "full" and "exclusive" rulemaking authority relating to all marine life. The statute does not say that the Commission cannot act at all with reference to endangered species; it says that the Commission is not the only agency permitted to act with reference to endangered species. Moreover, a TED is a shrimping gear specification. Clearly the Commission has the authority to regulate gear specifications. Thus, we are persuaded that the Commission's rulemaking power is circumscribed only by the requirement in the statute that the Commission act reasonably pursuant to the policy and standards in section 370.025.
. . . .
... Accordingly, the Commission has the power under sections 370.027 and 370.025 to protect and recover marine resources through fishing gear regulations just as it has the power to do so through season closures, bag limits, or fishery management plans.
Davis, 556 So.2d at 1106-07.
In January of 1998, this Court decided Advisory Opinion to the Attorney General re Fish & Wildlife Conservation Commission, 705 So.2d 1351 (Fla.1998) (hereinafter Advisory Opinion re FWCC), in which we assessed the validity of a citizens' initiative entitled "Fish and Wildlife Conservation Commission: Unifies Marine Fisheries and Fresh Water Fish Commissions." In pertinent part, the initiative provided:
(c) The Commission shall exercise the regulatory and executive powers of the state with respect to wild animal life, freshwater aquatic life, and marine aquatic life, except that all license fees for taking wild animal life, freshwater aquatic life and marine aquatic life, and penalties for violating regulations of the Commission shall be prescribed by specific statute. The Commission shall not be a sub-unit of any other state agency and shall have its own staff which includes management, research, enforcement and public information functions. The Legislature may enact laws in aid of the Commission, not inconsistent with this section. The Commission's exercise of executive powers in the area of planning, budgeting, personnel management and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the Commission by the Legislature for the purpose of management, protection and *497 conservation of wild animal life, freshwater aquatic life and marine aquatic life.
Id. at 1353 (quoting petition). We determined that the ballot summary was inaccurate and struck the initiative from the ballot. In our opinion, we wrote:
The summary does not explain to the reader that the power to regulate marine life lies solely with the legislature, which has delegated that power to not only the Marine Fisheries Commission but also the Department of Environmental Protection and the Department of Agriculture.[n.] Though the summary states that the purpose of the amendment is to "unify" the Marine Fisheries Commission with the Game and Fresh Water Fish Commission, those two entities do not share the same status. Despite the common label "commission," the former is a legislative creation while the latter enjoys independent constitutional stature. Thus the proposed amendment does not unify the two so much as it strips the legislature of its exclusive power to regulate marine life and grants it to a constitutional entity. The summary does not sufficiently inform the public of this transfer of power.
[n.] Thus, if the amendment were passed, the legislature's determination that the Department of Environmental Protection should regulate endangered marine species would no longer be effective. § 370.027; § 372.072(4)(a) 2, Fla. Stat. (1995).
Advisory Opinion re FWCC, 705 So.2d at 1355.
After our opinion was issued, the Constitutional Revision Commission, in its review of the constitution pursuant to article XI, section 2, proposed revision 5, which was placed on the ballot for the November 1998 election. Revision 5, as it appeared on the ballot, stated:
NO. 5
CONSTITUTIONAL REVISION ARTICLE II, SECTION 7(a);
ARTICLE IV, SECTION 9;
ARTICLE VII, SECTION 11(a)-(f);
ARTICLE X, SECTION 18;
ARTICLE XII, SECTION 22
(Constitutional Revision Commission)
Conservation of Natural Resources and Creation of Fish and Wildlife Conservation Commission
Requires adequate provision for conservation of natural resources; creates Fish and Wildlife Conservation Commission, granting it the regulatory and executive powers of the Game and Fresh Water Fish Commission and the Marine Fisheries Commission; removes legislature's exclusive authority to regulate marine life and grants certain powers to new commission; authorizes bonds to continue financing acquisition and improvement of lands for conservation, outdoor recreation, and related purposes; restricts disposition of state lands designated for conservation purposes.
(Emphasis added.) Revision 5 was adopted by the voters. This revision became article IV, section 9, and article XII, section 23 of the Florida Constitution. Article IV, section 9, provides:
Fish and wildlife conservation commission.There shall be a fish and wildlife conservation commission, composed of seven members appointed by the governor, subject to confirmation by the senate for staggered terms of five years. The commission shall exercise the regulatory authority and executive powers of the state with respect to wild animal life and fresh water aquatic life, and shall also exercise regulatory and executive powers of the state with respect to marine life, except that all license fees for taking wild animal life, fresh water aquatic life, and marine life *498 and penalties for violating regulations of the commission shall be prescribed by general law. The commission shall establish procedures to ensure adequate due process in the exercise of its regulatory and executive functions. The legislature may enact laws in aid of the commission, not inconsistent with this section, except that there shall be no special law or general law of local application pertaining to hunting or fishing. The commission's exercise of executive powers in the area of planning, budgeting, personnel management, and purchasing shall be as provided by law. Revenue derived from license fees for the taking of wild animal life and fresh water aquatic life shall be appropriated to the commission by the legislature for the purposes of management, protection, and conservation of wild animal life and fresh water aquatic life. Revenue derived from license fees relating to marine life shall be appropriated by the legislature for the purposes of management, protection, and conservation of marine life as provided by law. The commission shall not be a unit of any other state agency and shall have its own staff, which includes management, research, and enforcement. Unless provided by general law, the commission shall have no authority to regulate matters relating to air and water pollution.
(Emphasis added.) Article XII, section 23(b), provides:
(b) The jurisdiction of the marine fisheries commission as set forth in statutes in effect on March 1, 1998, shall be transferred to the fish and wildlife conservation commission. The jurisdiction of the marine fisheries commission transferred to the commission shall not be expanded except as provided by general law. All rules of the marine fisheries commission and game and fresh water fish commission in effect on the effective date of this amendment shall become rules of the fish and wildlife conservation commission until superseded or amended by the commission.
Following the voters' approval of revision 5, the Legislature enacted chapter 99-245, Laws of Florida. Chapter 99-245 established or amended the statutes which are challenged in the present action. The first challenged statute, section 20.331(6)(c), Florida Statutes (1999), provides in pertinent part:
(c) The provisions of chapter 120 shall be accorded to any party whose substantial interests will be affected by any action of the commission in the performance of its statutory duties or responsibilities. For purposes of this subsection, statutory duties or responsibilities include, but are not limited to, the following:
1. Research and management responsibilities for marine species listed as endangered, threatened, or of special concern, including, but not limited to, manatees and marine turtles.
The second challenged statute, section 370.025(4), Florida Statutes (1999), provides in pertinent part: "[FWCC] has full constitutional rulemaking authority over marine life, and listed species as defined in s. 372.072(3), except for ... [e]ndangered or threatened marine species for which rulemaking shall be done pursuant to chapter 120." The other challenged statutes, sections 370.12(1)(c)(3), (1)(h), (2)(g)(i), 2(k)-(o), 2(p)(1), and 2(q), Florida Statutes (1999), require the FWCC to comply with the APA when adopting rules pertaining to marine turtles and manatees.

THE PRESENT CASE
The petitioners initiated the present case in the circuit court as an action for *499 declaratory and injunctive relief. The circuit court determined that the issue presented was an issue of law and entered a "Final Summary Declaratory Judgment" in favor of the petitioners. The circuit court ruled:
The [petitioners] contend that portions of Chapter 95-245, Laws of Florida, are violative of Article IV, Section 9, and Article XII, Section 23, of the Florida Constitution. Specifically, [petitioners] argue that these constitutional provisions give the commission constitutional rule making authority concerning all marine life, including endangered and threatened species, and that the legislature thus cannot, as per Chapter 95-245, Laws of Florida, require the commission to comply with Chapter 120, Florida Statutes, in so doing. With some qualifications and clarification as to exactly what is the authority of the commission relative to endangered or threatened species, I agree that the commission's exercise of its authority cannot be made subject to Chapter 120, Florida Statutes.
. . . .
It appears, considering these and other matters of accord, that the [petitioners] and [respondents] do not really disagree on what was intended by the language used in the revision. Both agree that the nature of the newly created commission, in terms of its rule making power and authority, is modeled on the previous Game and Fresh Water Commission, which was not subject to Chapter 120 requirements. They also agree that the commission's jurisdiction and authority over marine life was to be whatever the jurisdiction and authority of the marine fisheries commission was over marine life as to March 1, 1998. The difference of opinions is to what, exactly, that authority and jurisdiction was.
The commission takes the position that since the Marine Fisheries Commission did not have regulatory or management authority over endangered or threatened marine species, such authority being delegated instead to the Department of Environmental Protection, that it does not now, after the revision, have such authority. Indeed, the language of Section 370.027, Florida Statutes, in effect on March 1, 1998, provided that the Marine Fisheries Commission had rule making authority over marine life "with the exception of endangered species."
This statutory language, however, is subject to interpretation, and was, in fact, interpreted in the case of State v. Davis, 556 So.2d 1104 (Fla.1990). Davis involved a challenge to an emergency rule passed by the Marine Fisheries Commission which prohibited possession of a trawler rigged for fishing which did not have a qualified turtle excluder device (TED) installed in it. The trial court found that the commission had exceeded its authority because Section 370.027, Florida Statutes, specifically prohibited the commission from taking action pertaining to endangered species, and since sea turtles were considered to be endangered, the rule was invalid. The Supreme Court disagreed.
We find that a plain reading of section 370.027 does not preclude the Commission from establishing rules that might impact upon endangered species. Rather, the plain import of the reference to "endangered species" is to modify the Commission's otherwise "full" and "exclusive" rulemaking authority relating to all marine life. The statute does not say that the Commission cannot act at all with reference to endangered species; it says that the Commission is not the only agency *500 permitted to act with reference to endangered species. Moreover, a TED is a shrimping gear specification. Clearly the Commission has the authority to regulate gear specifications. Thus, we are persuaded that the Commission's rule making power is circumscribed only by the requirement in the statute that the Commission act reasonably pursuant to the policy and standards in section 370.025.
556 So.2d at 1106.
The Davis case makes it clear that as of March 1, 1998, the Marine Fisheries Commission had the authority "to act with reference to endangered species," and that it was not precluded from "establishing rules that might impact upon endangered species." This authority, the Court said, was not exhaustive, but was shared with other state agencies.
Carribean Conservation Corp. v. Fish & Wildlife Conservation Comm'n, No. 99-4188 at 2, 5-7 (Fla.2d Cir. Ct. order filed March 9, 2000) (footnote omitted).
The circuit court then held that the FWCC acts not as an administrative agency but as a constitutional commission with "constitutional authority to promulgate rules that impact upon endangered or threatened species and to otherwise act with reference to endangered or threatened species," and that chapter 99-245 is unconstitutional to the extent that it seeks to require the FWCC to follow the APA in the exercise of its constitutional powers. Id. at 7.
The FWCC appealed to the First District Court of Appeal. The district court reversed the circuit court and stated:
Whether a state statute is constitutional is a pure issue of law, subject to de novo review. In our review of this case we have considered the functions and authority granted to the [Game Commission], [Marine Commission], and DEP, prior to the creation of the FWCC.
The trial court correctly determined that interpretation of Revision 5 is required to discern exactly what authority was transferred to the FWCC. However we disagree with the trial court's conclusion that the [Marine Commission] had (and the FWCC now has) constitutional authority to establish rules regarding endangered species.
The trial court primarily relied on the Florida Supreme Court's opinion in State v. Davis to decide what authority was vested in the [Marine Commission] and transferred to the FWCC by Revision 5. The trial court applied Davis too broadly. A careful review of Davis shows it does not hold that the MFC had general concurrent authority with other agencies to regulate endangered species. Instead, that case holds the MFC had only incidental regulatory authority to establish rules that might impact upon endangered marine species (such as those pertaining to gear specifications), and that incidental authority did not usurp or affect the statutory authority specifically assigned to other agencies.
Florida Fish & Wildlife Conservation Comm'n v. Caribbean Conservation Corp., 789 So.2d 1053, 1054-55 (Fla. 1st DCA 2001) (citations and footnote omitted). We approve the decision of the district court.
The question presented concerning whether the challenged statutes are constitutional is a question of law which we review de novo. See City of Miami v. McGrath, 824 So.2d 143 (Fla.2002). To determine whether the challenged statutory sections are constitutional, this Court must first determine whether the Florida Constitution provides the FWCC with constitutional regulatory authority over all *501 marine life. If that answer is no, this Court must decide whether the applicability of the challenged statutes is limited to marine life that was constitutionally excepted from FWCC's regulatory authority.
We agree with the petitioners that "[a]ny inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language." Florida Society of Ophthalmology v. Florida Optometric Assn., 489 So.2d 1118, 1119 (Fla.1986). Likewise, this Court endeavors to construe a constitutional provision consistent with the intent of the framers and the voters. In Gray v. Bryant, 125 So.2d 846, 852 (Fla.1960), this Court stated:
The fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it. Such a provision must never be construed in such manner as to make it possible for the will of the people to be frustrated or denied.
(Emphasis added.)[4] Moreover, in construing multiple constitutional provisions addressing a similar subject, the provisions "must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision." Advisory Opinion to the Governor1996 Amendment 5 (Everglades), 706 So.2d 278, 281 (Fla. 1997).
The petitioners argue that the plain language of article IV, section 9, grants the FWCC constitutional authority over all marine life. Again, in pertinent part, article IV, section 9, as amended by revision 5, states:
[FWCC] shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, and shall also exercise regulatory and executive powers of the state with respect to marine life, except that all license fees for taking ... marine life ... shall be prescribed by general law.
(Emphasis added.) The respondents point out that the use of the word "the" establishes a difference between the powers given to the FWCC regarding "wild animal life and fresh water aquatic life" and the powers given regarding marine life. In respect to "wild animal life and fresh water aquatic life," the FWCC is given "the regulatory and executive powers of the state." Id. (emphasis added). There is no "the" preceding "and shall also exercise regulatory and executive powers of the state with respect to marine life." We agree with the respondents that this disparate language and the manner in which marine life is dealt with separately from "wild animal life and fresh water aquatic life" require us to look further than simply at the plain language of article IV, section 9, to determine the intent of this section.
Furthermore, as the respondents note, we must also construe article XII, section 23, with article IV, section 9. We construe multiple constitutional provisions addressing similar subjects "in pari materia to ensure a consistent and logical meaning that gives effect to each provision." Advisory Opinion to the Governor1996 Amendment 5 (Everglades), 706 So.2d at 281. The pertinent part of article XII, section 23, for this construction states:

*502 (b) The jurisdiction of the marine fisheries commission as set forth in statutes in effect on March 1, 1998, shall be transferred to the fish and wildlife conservation commission. The jurisdiction of the marine fisheries commission transferred to the commission shall not be expanded except as provided by general law.
When the two constitutional sections are read together, we conclude that the provisions gave to the FWCC regulatory and executive powers with respect to marine life, including the regulatory and executive powers of the Marine Commission in effect on March 1, 1998.
However, whether this gave to the FWCC regulatory and executive powers over all marine life depends on whether regulatory and executive powers over some marine life remained with other agencies after the voters approved the revision 5 amendments. We find that such power did remain with the DEP regarding endangered and threatened species of marine life.
We reach this conclusion from the history of regulatory and executive powers regarding marine life, including the statutes which were the basis for regulating endangered and threatened marine life at the time the voters approved revision 5. As was previously outlined, it is clear that the DEP regulated endangered and threatened marine life when revision 5 was approved. Our decision in Advisory Opinion re FWCC recognized this conclusion in finding fault with the citizens' initiative ballot summary:
The summary does not explain to the reader that the power to regulate marine life lies solely with the legislature, which has delegated that power to not only the Marine Fisheries Commission but also the Department of Environmental Protection and the Department of Agriculture.
Advisory Opinion re FWCC, 705 So.2d at 1355 (emphasis added).
Significantly, in footnote 3 of that opinion, we referenced sections 370.027 and 372.072(4), Florida Statutes (1997). See id. at 1355 n. 3. These sections, which were in effect upon the adoption of revision 5, provided that the DEP had the responsibility for endangered and threatened marine species as defined in section 372.072(3).[5] The DEP also regulated those species protected by section 370.12. Because the regulation of marine life identified in those statutes was allocated to the DEP and not to the Marine Commission, revision 5's constitutional transfer of the Marine Commission's authority did not include the regulation of marine life identified in those sections.
Our conclusion is consistent with what was presented to the voters in the revision 5 ballot summary, which states that revision 5 "removes legislature's exclusive authority to regulate marine life and grants certain powers to new commission." This statement is reasonably read to mean that the Legislature had exclusive power to regulate marine life, but some, not all, of that exclusive power was being constitutionally transferred to the FWCC. This correlates with the constitutional language in article IV, section 9, and article XII, section 23, that what the FWCC is to have with respect to marine life is some regulatory powers, not "the" regulatory power of the state, and that the power which the FWCC is to have is the power which the Marine Commission had on March 1, 1998.
*503 The power in respect to marine life which the Marine Commission had on that date did not include the power which had been given to the DEP.
This conclusion is bolstered by the Constitutional Revision Commission's discussion of revision 5 immediately before revision 5 was approved for placement on the ballot. Commissioner Henderson began by stating:
The agreement which we worked out and has previously been adopted by this commission was that the regulatory authority which was being transferred was narrow in scope to the Marine Fisheries Commission, as it exists March 1st of 1998. That is what is being transferred. We have set up the mechanism for other regulatory authority to be transferred to the commission by subsequent legislative acts. The only transfer by operation of constitutional law, if this were to pass, would be the transfer of the Marine Fisheries Commission.
Fla. Const. Revision Comm'n, transcript of meeting at 38 (March 17, 1998) (available at Fla. Dep't of State, Div. of Archives, Tallahassee, Fla.) (hereinafter Commission Transcript) (emphasis added).
Commissioner Thompson proposed to amend article IV, section 9, to state that the FWCC shall exercise the regulatory authority and executive powers of the state with respect to wild animal "life and freshwater aquatic life, and shall also exercise regulatory authority and executive powers of the state with respect to marine life." Commission Transcript at 36. Commissioner Henderson described the amendment as follows:
So the amendment which Commissioner Thompson offers really deals with this very narrow issue of whether or not there is any regulatory authority which will currently still remain at DEP. And the answer to that is, yes, we did not move, for instance, manatees or turtles with this, with this amendment. We have only moved the Marine Fisheries Commission.

Commission Transcript at 38 (emphasis added). Commissioner Thompson explained the amendment in this manner:
So my amendment makes clear, and shall also exercise regulatory and executive powers of the state with respect to marine life as the Legislature sees fit. And that's all that there is to it. It is a very simple provision that just allows the Legislature to make the decision as to whether to expand that jurisdiction.
Commission Transcript at 51. The Constitutional Revision Commission adopted the amendment.
Commissioner Henderson offered some final comments:
In support of the package as now amended, I want to make very clear that what we are doing is a narrow transfer of the Marine Fisheries Commission to a new Fish and Wildlife Conservation Commission. By the Thompson amendment, we recognize that there are still some matters that still remain within the regulatory authority of DEP; namely at this time, manatees and sea turtles. There may be some other things.

The amendment contemplates that future Legislatures will be able to transfer additional authority to the new commission.
See Commission Transcript at 53-54 (emphasis added).
Finally, we agree with the First District that our decision in Davis, 556 So.2d at 1106, is not in conflict with upholding the constitutionality of the statutes presently under review. In Davis, we considered "gear specifications" which were within the jurisdiction of the Marine Commission. We simply recognized that there would be *504 an impact upon an endangered species because of the "gear specification," but that impact did not prevent the Marine Commission from regulating in a matter in which it had jurisdiction. See id.
Therefore, we hold that sections 20.331(6)(c); 370.025(4); and 370.12(1)(c)(3), (1)(h), (2)(g)-(i), 2(k)-(o), 2(p)(1), and 2(q), Florida Statutes (1999), are constitutional, with the exception of that portion of section 20.331(6)(c)(1) which refers to marine species that are "of special concern." We can discern no statutory basis in effect on March 1, 1998, for the DEP having regulatory or executive power in respect to a category of marine species designated "of special concern."
It is so ordered.
ANSTEAD, C.J., PARIENTE, LEWIS, and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
NOTES
[1] This Court previously granted petitioner Carribean Conservation Corporation's motion to withdraw as a party from this case but noted that the style of the case would remain the same for appellate purposes. Remaining petitioners are Save the Manatee Club, Inc., the Florida Wildlife Federation, Daniel R. Evans (Education Coordinator for Caribbean Conservation Corporation, Inc.), Patrick M. Rose (Director of Government Relations for Save the Manatee Club, Inc.), and Manley K. Fuller III (President of the Florida Wildlife Federation).
[2] Other agencies had and still have roles in this regulation, although those roles are not contended to have any relevance to the present case.
[3] Section 370.027, entitled "Rulemaking authority with respect to marine life," provided:

(1) Pursuant to the policy and standards in s. 370.025, the Marine Fisheries Commission is delegated full rulemaking authority over marine life, with the exception of endangered species, subject to final approval by the Governor and Cabinet sitting as the head of the Department of Natural Resources, in the areas of concern herein specified. The commission is instructed to make recommendations annually to the Governor and Cabinet regarding the marine fisheries research priorities and funding of the department. All administrative and enforcement responsibilities which are unaffected by the specific provisions of this act continue to be the responsibility of the department. The authority to regulate fishing gear in residential, manmade saltwater canals is specifically not delegated to the commission and is retained by the Legislature.
(2) Exclusive rulemaking authority in the following areas relating to marine life, with the exception of endangered species, is vested in the commission; any conflicting authority of any division or bureau of the department or any other agency of state government is withdrawn as of the effective date of the rule proposed by the commission and approved by the Governor and Cabinet, and the inconsistent rule, or the inconsistent part thereof, is superseded to the extent of the inconsistency:
(a) Gear specifications;
(b) Prohibited gear;
(c) Bag limits;
(d) Size limits;
(e) Species that may not be sold;
(f) Protected species;
(g) Closed areas;
(h) Quality control codes;
(i) Seasons; and
(j) Special considerations relating to eggbearing females and oyster and clam relaying.
(3)(a) The commission, pursuant to this act, shall adopt rules pursuant to chapter 120. When rules are ready for final adoption, the proposed rules shall be submitted to the executive director of the department for submission on the regular agenda of the department for final action by the Governor and Cabinet as head of the department. In considering a proposed rule recommended by the commission, the Governor and Cabinet may only approve or disapprove the proposed rule. If the rule is disapproved, it shall be withdrawn. The commission shall file a rule for adoption with the Department of State only after the rule is approved by the Governor and Cabinet. The department staff has no authority to change any proposed rule or recommendation submitted by the commission.
(b) The executive director of the department shall appoint a management-level staff member to coordinate with the director of the commission the submission by the commission of proposed rules for final approval by the Governor and Cabinet.
[4] See also Amos v. Mathews, 99 Fla. 1, 126 So. 308, 316 (1930) ("The object of constitutional construction is to ascertain and effectuate the intention and purpose of the people in adopting it. That intention and purpose is the `spirit' of the Constitutionas obligatory as its written word.").
[5] For the purpose of resolving any future issues, as well as for clarity, we hold that at the time revision 5 was passed, "endangered or threatened species" included all marine turtles.