819 So.2d 725 (2002)
ADVISORY OPINION TO the ATTORNEY GENERAL Re LOCAL TRUSTEES and Statewide Governing Board to Manage Florida's University System.
No. SC02-449.
Supreme Court of Florida.
May 23, 2002.
*727 Robert A. Butterworth, Attorney General, and Louis F. Hubener, III, Assistant Attorney General, Tallahassee, FL, Presentor.
Robin Gibson and Kevin A. Ashley of Gibson, Valenti & Ashley, Lake Wales, FL; and Timothy McLendon, Co-Counsel, Gainesville, FL, for the Sponsor, Education Excellence for Florida.
M. Stephen Turner and Kelly A. O'Keefe of Broad & Cassel, Tallahassee, FL, for Floridians for Education Reform.
PER CURIAM.
The Attorney General has requested that this Court review a proposed amendment to the Florida Constitution. Pursuant to section 15.21, Florida Statutes (2001), the Secretary of State submitted to the Attorney General an initiative petition which sought to amend the Florida Constitution to create a system of governance for the state university system. In turn, the Attorney General petitioned this Court for a written opinion as to the validity of the petition in accordance with article IV, section 10 of the Florida Constitution and section 16.061, Florida Statutes (2001). We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const.

THE LANGUAGE OF THE TWOTIER STATE UNIVERSITY SYSTEM PETITION
The following are the ballot title and summary of the proposed amendment:

Ballot title: Local trustees and statewide governing board to manage Florida's university system *728 Ballot summary: A local board of trustees shall administer each state university. Each board shall have thirteen members dedicated to excellence in teaching, research, and service to community. A statewide governing board of seventeen members shall be responsible for the coordinated and accountable operation of the whole university system. Wasteful duplication of facilities or programs is to be avoided. Provides procedures for selection and confirmation of board members, including one student and one faculty representative per board.
The text of the proposed amendment provides:
Article IX of the Florida Constitution is hereby amended to add the following as Section 7:
TEXT: State University System.___
(a) Purposes. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida's citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.
(b) State University System. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
(c) Local Boards of Trustees. Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the boards of trustees. Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the president of the student body of the university shall also be members.
(d) Statewide Board of Governors. The board of governors shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board.
This Court issued an order permitting interested parties to file briefs on the proposed amendment, and two parties did soEducation Excellence for Florida (hereinafter "EEF") in favor of the proposed amendment and Floridians for Education *729 Reform (hereinafter "FER") in opposition to the proposed amendment.

SINGLE-SUBJECT REQUIREMENT
The first issue we address is whether the proposed amendment meets the single-subject requirement. Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions "shall embrace but one subject and matter directly connected therewith." The single-subject requirement applies to the citizen initiative method of amending the constitution because
section 3 [citizen initiative] does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4. Accordingly, section three protects against multiple "precipitous" and "cataclysmic" changes in the constitution by limiting to a single subject what may be included in any one amendment proposal.
Advisory Op. to the Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353 (Fla.1998).
A proposed amendment must manifest a "logical and natural oneness of purpose" in order to satisfy the single-subject requirement. Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). This determination requires this Court to consider whether the proposed amendment substantially affects separate functions of government, as well as how it affects other provisions of the constitution. See In re Advisory Op. to the Att'y Gen.Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994).
The Attorney General and FER assert that the proposed amendment substantially alters or performs the functions of multiple branches of government. Specifically, they contend that the proposed amendment substantially affects the executive and the legislative branches of government in two ways: (1) it creates a system of governance for the state university system located within the executive branch of government; and (2) it elevates the university board of trustees to a constitutional office and removes a significant portion of the Legislature's authority to enact legislation regulating the duties and responsibilities of the university boards of trustees and the statewide board of governors. We disagree.
We find the present case to be akin to Advisory Opinion to the Attorney General re Fish & Wildlife Conservation Commission, 705 So.2d 1351 (Fla.1998). In Fish & Wildlife, the proposed amendment created a new independent commission which differed from the old commission by expanding its authority to include regulation of marine aquatic life. Through legislative delegation, marine aquatic life was regulated by the Marine Fisheries Commission, the Department of Environmental Protection, and the Department of Agriculture. In addition, the proposed amendment did not create a new entity where none existed; rather, it built upon an established constitutional entity. Id. at 1354. This Court held that "[w]hile the initiative may affect more than one branch of government, we cannot say it substantially changes or performs the functions of multiple branches of government in violation of article XI, section 3." Id. at 1354.
In the present case, the proposed amendment would affect the executive and legislative branches by authorizing the statewide board of governors to "operate, regulate, control, and be fully responsible for the management of the whole university system" which is currently the legislative responsibility and duty of the Florida Board of Education, an organization located within the cabinet system of the executive *730 branch. See §§ 229.004, 229.0072(4), Fla. Stat. (2001). As in Fish & Wildlife, we find that the sole purpose of the proposed amendment is to create a governance of the state university system. The enumeration of the duties and responsibilities of the statewide board of governors and the local university boards of trustees is a necessary component of a single dominant plan that complies with the single-subject requirement. While the proposed amendment may affect more than one branch of government, we cannot say it substantially alters or performs the functions of multiple branches of government in violation of article XI, section 3. "A proposal that affects several branches of government will not automatically fail." Fish & Wildlife Conservation Comm'n, 705 So.2d at 1353-54. Furthermore, we see no danger of logrolling here.
FER also asserts that the proposed amendment substantially affects provisions of the Florida Constitution, particularly sections 1[1] and 3[2] of article IX relative to education, without informing the voters of its impact. We disagree. Even though the proposed amendment interacts with both provisions by providing a two-tier governing system specifically for the state university system, it does not substantially affect or change either one. "[T]he possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment." Advisory Op. to the Att'y Gen.Fee on the Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla. 1996).
We therefore conclude that the only subject embraced in the proposed amendment is the two-tier system of governance of the state university system. Its provisions, which create a statewide board of governors and local boards of trustees for each state university, are logically related to the subject of the proposed amendment. See Advisory Op. to the Att'y Gen.Limited Marine Net Fishing, 620 So.2d 997 (Fla. 1993). Thus, we find that the proposed amendment is functionally and facially unified and therefore complies with the single-subject requirement.

BALLOT TITLE AND SUMMARY REQUIREMENTS
The second issue is whether the ballot title and summary express the chief purpose of the proposed amendment in plain and unequivocal language. Section 101.161 of the Florida Statutes governs the requirements for ballot titles and summaries and provides, in relevant part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... [T]he substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2001); see also Advisory Op. to Att'y Gen.Limited Political Terms in Certain Elective Offices, *731 592 So.2d 225, 228 (Fla.1991) (stating that ballot title and summary must state "in clear and unambiguous language the chief purpose of the measure"). These requirements make certain that the "electorate is advised of the true meaning, and ramifications, of an amendment." Advisory Op. to the Att'y Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994). The purpose of section 101.161(1) is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." See Advisory Op. to the Att'y Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). Nevertheless, "the title and summary need not explain every detail or ramification of the proposed amendment." Advisory Op. to the Att'y Gen. re Prohibiting Pub. Funding of Political Candidates' Campaigns, 693 So.2d 972, 975 (Fla.1997).
FER contends that the ballot summary fails to explain that substantial changes will occur in the existing government structure relative to the governance of the university system. Specifically, FER argues that the ballot summary, as well as the proposed amendment, fails to indicate that the amendment will alter the Legislature's newly enacted Florida Education Governance Reorganization Act. This act created eleven university boards of trustees, one for each state university, and conferred the management and oversight of the university system to the Florida Board of Education pursuant to sections 229.001-229.0082, Florida Statutes (2001). We reject this contention.
This Court recently held that a ballot summary banning smoking in enclosed workplaces fulfilled the requirements under section 101.161 even though it failed to disclose the effect that the proposed amendment would have on existing statutory law restricting smoking in public places. See Advisory Op. to Att'y Gen. re Protect People from the Health Hazards of Second-Hand Smoke, 814 So.2d 415 (Fla. 2002). We reasoned that the average voter was already aware that smoking was banned in certain public places. Id. Likewise, we believe that the average voter is also aware that the state university system is currently governed by the Florida Board of Education, whose powers and duties are enumerated in chapter 229 of the Florida Statutes. As further suggested by the proponents, it would be virtually impossible to indicate within the word limit of the ballot summary all the ramifications the proposed amendment would have on the Florida Education Governance Reorganization Act. See Advisory Op. to the Att'y Gen. reAmendment to Bar Gov't from Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 899 (Fla.2000) ("[A]n exhaustive explanation of the interpretation and future possible effects of the amendment [is] not required."). Thus, we conclude that the ballot summary adequately states its chief purpose and is not misleading in this regard. See Advisory Op. to the Att'y Gen. re Prohibiting Pub. Funding of Political Candidates' Campaigns, 693 So.2d 972 (Fla.1997) (determining that the ballot title and summary were not misleading and satisfied the requirements of section 101.161 even though opponents argued that the proposed amendment effectively invalidated existing statutory law).
FER asserts that the ballot summary fails to mention that provisions in the state constitution would be substantially affected. If a petition substantially modifies a constitutional provision, then this consequence must be mentioned in the ballot summary. See Advisory Op. to the Att'y Gen. re Amendment to Bar Gov't from Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888 (Fla. *732 2000). Because we find that the proposed amendment does not substantially affect or alter any provision in the state constitution, the ballot summary is not defective in this regard.
FER contends that the ballot summary is misleading in its inconsistent use of the terms "local," "accountable operation," and "procedures for selection." We find that the differing use of terminology could not reasonably mislead the voters, see In re Advisory Op. to the Att'y Gen. EnglishThe Official Language of Florida, 520 So.2d 11 (Fla.1988), and presume that the average voter has a certain amount of common understanding and knowledge. See Advisory Op. to Att'y Gen. re Protect People from the Health Hazards of Second-Hand Smoke, 814 So.2d 415 (Fla.2002).
Accordingly, we hold that the initiative petition and proposed ballot title and summary meet the legal requirements of article XI, section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2001). No other issue is encompassed in this opinion, and it should not be construed as favoring or opposing the passage of the proposed amendment.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Article IX, section 1 of the Florida Constitution provides in relevant part: "Adequate provision shall be made by law ... for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require."
[2] Article IX, section 3, Florida Constitution provides that "[m]embers of any appointive board dealing with education may serve terms in excess of four years as provided by law."