WETHERELL, J.
 

 Appellants, citizens and taxpayers with various roles and interests in the state university system, brought a declaratory action against the presiding officers of the Legislature challenging the constitutionality of several statutes
 
 [1]
 
 and a provision of the 2007-08 General Appropriations Act
 
 [2]
 
 (collectively “the challenged statutes”) that restrict the universities’ expenditure of tuition and fees and condition the appropriation of funds to each university upon compliance with the tuition and fee policies established by the Legislature. The Board of Governors (Board) was originally a co-plaintiff, but it subsequently filed a notice of voluntarily dismissal of its claims and is no longer a party. The parties filed
 
 *317
 
 cross motions for summary judgment and the trial court granted summary judgment in favor of the Legislature. Appellants timely sought review in this court.
 

 As they did below, Appellants contend on appeal that the challenged statutes are unconstitutional because they contravene the Board’s exclusive authority under article IX, section 7(d) of the Florida Constitution to establish and expend tuition and fees. The Legislature responds that the challenged statutes are constitutional because the Board’s authority to manage the university system is subject to the Legislature’s appropriation power. We agree that the challenged statutes are constitutional and, therefore, affirm the order on appeal.
 

 In November 2002, the voters approved Amendment 11, which had been proposed by initiative petition. The amendment created article IX, section 7 of the Florida Constitution, which provides in pertinent part:
 

 SECTION 7. State University System.—
 

 (a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida’s citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.
 

 (b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
 

 [[Image here]]
 

 (d) STATEWIDE BOARD OF GOVERNORS. The board of governors shall be a body corporate consisting of seventeen members.
 
 The board shall operate, regulate, control, and be fully responsible for the management of the whole university system.
 
 These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs.
 
 The board’s management shall be subject to the powers of the legislature to appropriate for the expenditure of funds,
 
 and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board, (emphasis added).
 

 Appellants contend that Amendment 11 effectively transferred the power to set and expend university tuition and fees from the Legislature to the Board. Appellants acknowledge the language in the article IX, section 7(d) referring to the Legislature’s power of appropriation, but draw a distinction between general revenue funds, which they concede still fall within the Legislature’s constitutional appropriation power, and tuition and fees, which they categorize as “agency” funds within the Board’s exclusive control. We do not see any constitutional or historical basis for the distinction that Appellants ask us to draw.
 

 
 *318
 
 The Florida Constitution vests the “power of the purse” in the Legislature by-granting it exclusive and plenary power to raise
 
 [3]
 
 and appropriate
 
 [4]
 
 state funds.
 
 See Chiles v. Children A, B, C, D, E, and F,
 
 589 So.2d 260, 267 (Fla.1991) (“Under any working system of government, one of the branches must be able to exercise the power of the purse, and in our system it is the legislature, as representative of the people and maker of laws, including laws pertaining to appropriations, to whom that power is constitutionally assigned.”);
 
 State ex rel. Kurz v. Lee,
 
 121 Fla. 360, 163 So. 859, 868 (1935) (observing that the Florida Constitution gives the Legislature the “exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government”);
 
 State v. Green,
 
 95 Fla. 117, 116 So. 66, 69 (1928) (holding that “[t]he power to appropriate state funds for a lawful state purpose is legislative” and invalidating statute that purported to delegate this power by effectively giving a blank check to an executive branch entity and allowing it to fill in the amount);
 
 Cheney v. Jones,
 
 14 Fla. 587, 610 (1874) (broadly construing the Legislature’s constitutional authority to raise revenue). These powers have been vested exclusively within the legislative branch since the time of the State’s first constitution.
 
 See
 
 art. VIII, §§ 1-3, Fla. Const. (1838).
 

 The legislative power to raise funds is not limited to the imposition of taxes; it includes the power to impose fees necessary to offset the costs of using state government services. Likewise, the power of appropriation is not limited to certain types of funds; it extends to
 
 all
 
 funds in the State Treasury from whatever source.
 
 See Advisory Op. to the Governor,
 
 200 So.2d 534, 536 (Fla.1967) (explaining that “the State Constitution requires legislative appropriation or authorization for the use of any funds from whatever source by a public agency or official for a public purpose”). Additionally, the appropriation power includes the authority to attach contingencies to the appropriation of funds that are reasonably related to the subject of the appropriation.
 
 See Fla. Dep’t of Educ. v. Glasser,
 
 622 So.2d 944, 948 (Fla.1993) (rejecting constitutional challenge to provision of appropriation bill that capped the millage that local school boards were authorized to impose because, pursuant to
 
 Brown v. Firestone,
 
 382 So.2d 654, 663 (Fla.1980), “a qualification or restriction in an appropriations act will pass constitutional muster if it directly and rationally relates to the purpose of the appropriation”);
 
 Op. to the Governor,
 
 239 So.2d 1, 9 (Fla.1970) (“Appropriations may constitutionally be made contingent upon matters or events reasonably related to the subject of the appropriation, but may not be made to depend upon entirely unrelated events.”).
 

 University tuition and fees are unquestionably state funds; they are collected by state universities for the use of their services and the monies collected are deposited into the State Treasury.
 
 See
 
 § 215.31, Fla. Stat. (requiring all revenue received under the authority of state law to be deposited into the State Treasury and then credited to the appropriate fund). The fact that the tuition and fees are deposited into a trust fund rather than the General Revenue Fund has no bearing on the Legislature’s plenary authority over
 
 *319
 
 those monies because a trust fund is, at its essence, nothing more than an accounting tool used to segregate monies within the State Treasury.
 
 See
 
 § 215.S2, Fla. Stat.;
 
 Secretary of State v. Milligan,
 
 704 So.2d 152, 158 (Fla. 1st DCA 1997) (noting that a trust fund “merely segregates or earmarks funds” and holding that, when a trust fund is terminated but its funding source remains, the monies collected must be deposited in the General Revenue Fund).
 

 In light of these principles, the validity of the challenged statutes boils down to whether Amendment 11 divested the Legislature of its “power of the purse” over state university tuition and fees by vesting that authority in the Board. Like the trial court, we see nothing in the language of Amendment 11 or its history that would suggest that such a fundamental change in the Legislature’s power was intended or effectuated.
 

 Article IX, section 7(d) provides that the Board is “fully responsible for the management of the whole university system.” But this provision also makes clear that the Board’s management of the university system is “subject to the powers of the legislature to appropriate for the expenditure of funds.”
 
 Id.
 
 This express subrogation of the Board’s management authority to the Legislature’s appropriation power, coupled with the absence of any language in article IX, section 7 referring to tuition and fee setting,
 
 [5]
 
 undermines Appellants’ argument that the intent of this provision was to grant the Board such authority.
 

 Not only is there no reference to tuition or fees in the language of article IX, section 7(d), there was no indication in the ballot title or summary for Amendment 11 that the Legislature’s exclusive and plenary appropriations power was being in any way limited with respect to the state university system. In its entirety, the ballot title and summary for the amendment stated:
 

 LOCAL TRUSTEES AND STATEWIDE GOVERNING BOARD TO MANAGE FLORIDA’S UNIVERSITY SYSTEM.
 

 A local board of trustees shall administer each state university. Each board shall have thirteen members dedicated to excellence in teaching, research, and service to community. A statewide governing board of seventeen members shall be responsible for the coordinated and accountable operation of the whole university system. Wasteful duplication of facilities or programs is to be avoided. Provides procedures for selection and confirmation of board members, including one student and one faculty representative per board.
 

 This language did not indicate, or even intimate, that the Board would have any authority over the establishment and expenditure of tuition and fees. The language does not refer to tuition or fees
 
 at all,
 
 and it certainly does not include the distinction advocated by Appellants between funds controlled by the Legislature and “agency” funds under the control of the Board. Additionally, after reviewing the proposed amendment, the Florida Supreme Court determined that, although the amendment affects more than one branch of government by virtue of its impact on the Legislature’s existing regulatory authority over the state university system, it does not “substantially alter[] or perform[ ] the functions of multiple branches of government in violation of article XI, section 3.”
 
 Advisory Op. to the
 
 
 *320
 

 Attorney Gen. re Local Trustees,
 
 819 So.2d 725, 730 (Fla.2002). This holding undermines Appellants’ argument that Amendment 11 authorized the Board to perform the historically legislative function of raising revenues through the establishment of tuition and fees.
 

 We are unaware of any entity other than the Legislature in the history of our state that has been authorized by the Florida Constitution to exercise the quintessential legislative power of raising and appropriating state funds. Thus, if as Appellants contend, such authority was vested in the Board by Amendment 11, it would be an unprecedented change in our state’s government.
 

 The fact that such a fundamental change in the Legislature’s powers was in no way described in the ballot title or summary is a strong indication that it was not an intended result. Indeed, had that been the intent of the amendment, the Florida Supreme Court likely would have found the ballot summary to violate the single-subject requirement for initiative petitions.
 
 See, e.g., Advisory Op. to the Attorney Gen. re Tax Limitation,
 
 644 So.2d 486, 494 (Fla.1994) (striking initiative petition from the ballot because the summary did not explain that the amendment substantially affected other constitutional provisions, in-eluding the Legislature’s power under article VII, section 1, and observing that the summary’s failure to do so “violate[d] the principle we clearly established in
 
 Fine [v. Firestone,
 
 448 So.2d 984 (Fla.1984),] that the electorate must be advised of the effect a proposal has on
 
 existing sections of
 
 the constitution”) (emphasis in original).
 

 Appellants point to judicial decisions from other states that have constitutional provisions establishing a university governance structure similar to that in article IX, section 7 to support their argument that the Board has the power to set and expend tuition and fees independent of the Legislature. But even if we were inclined to rely on out-of-state decisions to interpret the Florida Constitution, we would not do so here because of material differences in the language of the other states’ constitutional provisions and the language of article IX, section 7.
 
 [6]
 

 Finally, Appellants argue that this court’s analysis of article IX, section 7 in
 
 NAACP v. Florida Board of Regents,
 
 876 So.2d 686, 639-40 (Fla. 1st DCA 2004), definitively resolves this case their favor.
 
 [7]
 
 However, that case has no bearing on the issue currently before the court.
 

 NAACP
 
 involved an administrative challenge to Board rules governing admission standards that had originally been adopted
 
 *321
 
 by the Department of Education (DOE).
 
 Id.
 
 at 637. The issue in that case was whether the Board’s adoption of the DOE rules mooted the rule challenge because the Board’s rulemaking authority flowed from the constitution and, thus, was not subject to the Administrative Procedure Act.
 
 Id.
 
 at 689. The case did not address the Board’s power to establish tuition and fees. Although the decision referred to the “broad grant of authority” provided to the Board by article IX, section 7, the decision pointed out that this authority was subject to the Legislature’s authority to appropriate funds, to confirm the Board’s appointed members, and to set members’ staggered terms.
 
 Id.
 
 at 639-40. In fact the decision specifically noted that “[ajrticle IX, section 7, clearly contemplates a significant role in the management of the state university system for the Legislature, through its power over appropriations.”
 
 Id.
 
 at 640. Thus, our determination in this case that the challenged statutes are constitutional is not inconsistent with our holding in
 
 NAACP.
 

 In sum, for the reasons stated above, we hold that article EX, section 7(d) of the Florida Constitution does not grant the Board authority to set and appropriate tuition and fees; rather, as it was prior to the adoption of Amendment 11, that power is vested exclusively in the Legislature under article VII, section 1(c) and (d) of the Florida Constitution. Accordingly, because the challenged statutes do not contravene the Board’s authority under article' IX, section 7(d), the trial court properly granted summary judgment in favor of the Legislature.
 

 AFFIRMED.
 

 THOMAS, and SWANSON, JJ., concur.
 

 [1]
 

 . §§ 1011.41,1011.4106, 1011.91, Fla. Stat. (2007).
 

 [2]
 

 . Ch. 2007-72, § 2, item 156, Laws of Florida.
 

 [3]
 

 . Art. VII, § 1(d), Fla. Const. ("Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period.”).
 

 [4]
 

 . Art. VII, § 1(c), Fla. Const. ("No money shall be drawn from the treasury except in pursuance of appropriation made by law.”).
 

 [5]
 

 . We recognize the list of the Board's responsibilities in article IX, section 7(d) is nonexclusive, but the listed executive and regulatory powers are materially different in type than the quintessential legislative power of raising and appropriating state funds.
 

 [6]
 

 . The Michigan Constitution, for example, requires the legislature to appropriate moneys to maintain the public universities in the state,
 
 see
 
 art. VIII, § 4, Mich. Const., but it also expressly provides that the universities’ governing boards "shall have general supervision of its institution and the
 
 control and direction of all expenditures from the institution’s funds."
 
 Art. VIII, §§ 5, 6, Mich. Const, (emphasis added). Language such as this is notably absent from article IX, section 7 of the Florida Constitution.
 

 [7]
 

 . Appellants also make passing reference to this court’s decision in
 
 Fla. Public Employees Council 79, AFSCME, AFL-CIO v. Public Employees Relations Comm'n,
 
 871 So.2d 270 (Fla. 1st DCA 2004). That case has no bearing on the issues here; the narrow issue resolved in that case was whether, the Public Employees Relations Commission (PERC) properly denied the union's request to designate the Board as the public employer of the universities, rather than the boards of trustees of each university.
 
 Id.
 
 at 271. The court affirmed the PERC order, noting that the Board adopted a resolution pursuant to its constitutional authority to manage the university system designating the boards of trustees as the public employers for the universities.
 
 Id.
 
 at 274-75. The case had nothing to do with the Board's authority over tuition and fees.