PARIENTE, J.
The issue presented to the Court in this case is one of constitutional construction: whether the Legislature or the constitutionally created Board of Governors has the power to control the setting of and appropriating for the expenditure of tuition and fees for the Florida university system under article IX, section 7(d), of the Florida Constitution. In 2007, the Legislature passed several statutes and included a provision in the 2007-2008 General Appropriations Act that exerted control over the setting of and appropriating for the expenditure of tuition and fees.[1] The Petitioners challenge these statutes as unconstitutional, contending that the 2002 constitutional amendment creating the Board of Governors transferred the authority over tuition and fees to the Board, divesting the Legislature of any power over these funds.
Although the question in this case is whether the challenged statutes are constitutional, the answer hinges on our interpretation of the Florida Constitution. Specifically, we address whether the 2002 amendment to the Florida Constitution creating the Board of Governors and transferring to the Board the power to “operate, regulate, control, and be fully responsible for the management of the whole university system,” art. IX, § 7(d), Fla. Const., carried with it the power to control tuition and fees and thereby divested the Legislature of that authority. The First District Court of Appeal held that this constitutional amendment did not transfer to the Board the authority to set and appropriate for the expenditure of tuition and fees and, therefore, that the challenged statutes were valid. Graham v. Haridopolos, 75 So.3d 315, 321 (Fla. 1st DCA 2011). Because the district court expressly declared a state statute valid, this Court has jurisdiction.[2]
For the reasons more fully explained below, we hold that the constitutional source of the Legislature’s control over the setting of and appropriating for the expenditure of tuition and fees derives from its power under article VII, sections 1(c) and (d), of the Florida Constitution to raise revenue and appropriate for the expenditure of state funds. The language of the 2002 amendment, now contained in article IX, section 7, is devoid of any indication of an intent to transfer this power to the Board of Governors. Accordingly, we conclude that the challenged statutes by which the Legislature has exercised control over these funds are facially constitutional and approve the First District’s decision.
FACTS AND BACKGROUND
Prior to 2001, the Board of Regents, a statutorily created entity, managed the state university system under the control and supervision of the State Board of Education. The Board of Regents was abolished as of July 1, 2001, by the Legislature and its powers were transferred to a new entity known as the Florida Board of Education.[3]
*600 In apparent response to the Legislature’s actions, a constitutional amendment was proposed by citizen initiative that “sought to amend the Florida Constitution to create a system of governance for the state university system.” In re Advisory Op. to Atty. Gen. ex rel. Local Trustees, 819 So.2d 725, 727 (Fla.2002). In November 2002, the voters approved the proposed amendment to article IX of the Florida Constitution, establishing “a system of governance for the state university system of Florida” and creating the Board of Governors to “operate, regulate, control, and be fully responsible for the management of the whole university system.” See art. IX, § 7(a), (d), Fla. Const. The amendment, which had been proposed by a citizen initiative petition and is now contained in article IX, section 7, of the Florida Constitution, provided in pertinent part as follows:
SECTION 7. State University System.—
(a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida’s citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.
(b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
[[Image here]]
(d) STATEWIDE BOARD OF GOVERNORS. The board of governors shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board’s management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law....
Art. IX, § 7, Fla. Const.
In 2007, the Legislature enacted the challenged statutory provisions involving tuition and fees. See § 1011.41, Fla. Stat. (2007) (stating that funds provided to state universities in the General Appropriations Act were contingent upon each university complying with tuition and fee policies established by the Legislature); § 1011.4106, Fla. Stat. (2007) (stating that any appropriations provided in the General Appropriations Act from the Education/General Student and Other Fees Trust Fund are the only budget authority for the universities to expend tuition and out-of-state fees and that the expenditure of tuition and fee revenues from local accounts by each university shall not exceed the authority provided in the General Appropriations Act unless otherwise approved); § 1011.91, Fla. Stat. (2007) (stating that except as otherwise provided in the General Appropriations Act, all monies received by universities from, among other things, student fees authorized in section 1009.24 are appropriated to the use of the universities collecting the same, to be expended by the university board of trustees pursuant to detailed budgets filed with the Board of *601 Governors). In addition, the Legislature included similar language in the 2007-2008 General Appropriations Act.[4]
Shortly thereafter, the Petitioners in this case,[5] as individually named plaintiffs in their capacity as citizens and taxpayers, sought a declaratory judgment that the above-referenced statutes were unconstitutional because they violated article IX, section 7, of the Florida Constitution. The Board of Governors itself is not a party to this case.[6] The Petitioners do not allege that any of the specific tuition and fee policies set by the Legislature are unconstitutional as applied, but rather broadly assert that the Legislature no longer has the power to control tuition and fees. In other words, the Petitioners contend that while the Legislature retains appropriations authority over the portion of university funding derived from general revenue, the Legislature was divested of authority over the funding stream generated by tuition and fees.
The trial court granted summary judgment in favor of the Legislature, ruling that the statutes in question were constitutional because article IX, section 7, of the Florida Constitution “does not reveal an intent to remove the Legislature’s historic revenue-raising and appropriations authority over tuition and fees at public universities granted in Article VII, Section 1, and Article IX, Section 1, of the Constitution.”
On appeal, the First District Court of Appeal affirmed, holding that the statutes were constitutional. The First District rejected the Petitioners’ attempt to “draw a distinction between general revenue funds, which they concede still fall within the Legislature’s constitutional appropriation power, and tuition and fees, which they categorize as ‘agency’ funds within the Board’s exclusive control.’ ” Graham, 75 So.3d at 317. The First District reasoned that “[t]he legislative power to raise funds is not limited to the imposition of taxes; it includes the power to impose fees necessary to offset the costs of using state government services. Likewise, the power of appropriation is not limited to certain types of funds; it extends to all funds in the State Treasury from whatever source.” Id. at 318. With respect to university tuition and fees, the First District held that they “are unquestionably state funds; they are collected by state universities for the use of their services and the monies collected are deposited into the State Treasury.” Id.
The First District therefore framed the issue as whether the constitutional amend *602 ment establishing the Board divested the Legislature of its “power of the purse” over state tuition and fees by vesting that authority in the Board. Id. at 319. Addressing this question, the First District held:
[W]e see nothing in the language of [the amendment] or its history that would suggest that such a fundamental change in the Legislature’s power was intended or effectuated.
Article IX, section 7(d) provides that the Board is “fully responsible for the management of the whole university system.” But this provision also makes clear that the Board’s management of the university system is “subject to the powers of the legislature to appropriate for the expenditure of funds.” Id. This express subrogation of the Board’s management authority to the Legislature’s appropriation power, coupled with the absence of any language in article IX, section 7 referring to tuition and fee setting, undermines Appellants’ argument that the intent of this provision was to grant the Board such authority.
Not only is there no reference to tuition or fees in the language of article IX, section 7(d), there was no indication in the ballot title or summary for [the amendment] that the Legislature’s exclusive and plenary appropriations power was being in any way limited with respect to the state university system.
[[Image here]]
We are unaware of any entity other than the Legislature in the history of our state that has been authorized by the Florida Constitution to exercise the quintessential legislative power of raising and appropriating state funds. Thus, if as [Petitioners] contend, such authority was vested in the Board by [the amendment], it would be an unprecedented change in our state’s government.
The fact that such a fundamental change in the Legislature’s powers was in no way described in the ballot title or summary is a strong indication that it was not an intended result. Indeed, had that been the intent of the amendment, the Florida Supreme Court likely would have found the ballot summary to violate the single-subject requirement for initiative petitions.
Id. at 319-20 (footnote omitted). Accordingly, the First District concluded that article IX, section 7(d), did “not grant the Board authority to set and appropriate tuition and fees; rather, as it was prior to the adoption of [the amendment], that power is vested exclusively in the Legislature” under the Legislature’s appropriations power. Id. at 321.
ANALYSIS
In analyzing the issue presented in this case, it is important to be clear at the outset as to what this case is not about. This case is not about an as-applied challenge to a specific tuition and fee policy or a contingency attached to an appropriation that would encroach on the Board’s constitutional responsibility to manage the state university system. Although the attorney for the Legislature stated in oral argument that the appropriations power includes the authority to attach contingencies to the appropriation of funds, relying on Florida Department of Education v. Glasser, 622 So.2d 944, 948 (Fla.1993), we emphasize that such authority is not without limits. The question of determining the limits on attaching contingencies with respect to the Board, however, is not before the Court in this case. Nor is this case about which entity has control over monies from federal grants or private donations to universities.
*603 The sole issue presented in this case is whether the 2002 constitutional amendment creating the Board of Governors transferred authority over the setting of and appropriating for the expenditure of tuition and fees from the Legislature to the Board, and whether the challenged statutes exercising control over tuition and fees are therefore facially unconstitutional. “Because the issue before the Court involves the determination of a statute’s constitutionality and the interpretation of a provision of the Florida Constitution, it is a question of law subject to de novo review.” Crist v. Fla. Ass’n of Criminal Def. Lawyers, Inc. (FACDL), 978 So.2d 134, 189 (Fla.2008). Although the Court’s review is de novo, “statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome.” Id.
“When reviewing constitutional provisions, this Court follows principles parallel to those of statutory interpretation. First and foremost, this Court must examine the actual language used in the Constitution. If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written.” Id. at 139-40 (internal quotation marks and citations omitted). “When interpreting constitutional provisions, this Court endeavors to ascertain the will of the people in passing the amendment.” In re Senate Joint Resolution of Legislative Apportionment 1176, 83 So.3d 597, 599 (Fla.2012). “In accord with those tenets of constitutional construction, this Court ‘endeavors to construe a constitutional provision consistent with the intent of the framers and the voters.’ ” Id. at 614 (quoting Zingale v. Powell, 885 So.2d 277, 282 (Fla.2004)). “Moreover, in construing multiple constitutional provisions addressing a similar subject, the provisions ‘must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.’” Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 501 (Fla.2003) (quoting Advisory Op. to the Gov.-1996 Amend. 5 (Everglades), 706 So.2d 278, 281 (Fla.1997)).
Both parties agree that the amendment at issue did not alter the Legislature’s article VII, section 1, appropriations power. “Appropriation” is defined as a “legal authorization to make expenditures for specific purposes within the amounts authorized by law.” § 216.011, Fla. Stat. (2007). The Florida Constitution in article VII, section 1, vests in the Legislature the constitutional duty and power to raise and appropriate state funds:
(c) No money shall be drawn from the treasury except in pursuance of appropriation made by law.
(d) Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period.
Art. VII, § 1, Fla. Const.; see also Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 265 (Fla.1991) (stating that based on article VII, sections 1(c) and 1(d), “this Court has long held that the power to appropriate state funds is legislative and is to be exercised only through duly enacted statutes”). Article VII, section 1(c), of the Florida Constitution gives the Legislature “the exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government.” Republican Party of Fla. v. Smith, 638 So.2d 26, 28 (Fla.1994) (quoting State ex rel. Kurz v. Lee, 121 Fla. 360, 384, 163 So. 859, 868 (1935)).
The legislative authority over public funds has been referred to as the “power of the purse.” Children A B, C, D, E, & F, 589 So.2d at 267. As this Court has explained:
*604 Under any working system of government, one of the branches must be able to exercise the power of the purse, and in our system it is the legislature, as representative of the people and maker of laws, including laws pertaining to appropriations, to whom that power is constitutionally assigned....
[[Image here]]
The constitution specifically provides for the legislature alone to have the power to appropriate state funds. More importantly, only the legislature, as the voice of the people, may determine and weigh the multitude of needs and fiscal priorities of the State of Florida. The legislature must carry out its constitutional duty to establish fiscal priorities in light of the financial resources it has provided.

Id.

The Legislature has been given further responsibility and authority with respect to funding universities in article IX, section 1(a), of the Florida Constitution, which provides that the Legislature must make adequate provision for the establishment, maintenance, and operation of Florida’s universities. See art. IX, § 1(a), Fla. Const. (“Adequate provision shall be made by law ... for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.”). Unquestionably, this legislative obligation was not altered by the amendment.
Because the issue presented in this case involves constitutional construction, we begin with the actual language of the constitutional provision. Caribbean Conservation Corp., 838 So.2d at 501 (“[Ajny inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision’s explicit language.” (citation and internal quotation marks omitted)). Article IX, section 7, of the Florida Constitution states that its purpose is to “establish a system of governance for the state university system of Florida.” Art. IX, § 7(a), Fla. Const. It provides for the Board of Governors, which “shall operate, regulate, control, and be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const. The provision then lists examples: “These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs.” Id. The provision also expressly states that the Board’s “management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law.” Id.
The Petitioners contend that the language of the amendment constituted an “all-inclusive” transfer of power to the Board, transferring control over every aspect of universities, with the exception of the Legislature’s power of appropriations over the general revenue portion of university funding. However, contrary to the Petitioners’ position, the language of article IX, section 7, does not plainly transfer to the Board the Legislature’s control over tuition and fees, but instead grants to the Board the responsibility to “operate,” “regulate,” “control,” and “be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const. Nothing within the language of article IX, section 7, indicates that it was intended to transfer power over tuition and fees to the Board. Simply put, the language' of article IX, section 7, is not “clear” or “unambiguous” and does not *605 expressly “address[ ] the matter in issue.” FACDL, 978 So.2d at 140. We therefore turn to principles of construction, always endeavoring to construe the constitutional provision “in a manner consistent with the intent of the framers and voters.” W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 9 (Fla.2012); FACDL, 978 So.2d at 140.
The canon of construction known as ejusdem generis is instructive in construing the meaning of “operate, regulate, control, and be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const. Under this canon, “when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed.” State v. Hearns, 961 So.2d 211, 219 (Fla.2007). Employing this canon of constitutional construction, the Board’s responsibilities in operating, regulating, controlling, and being responsible for the management of the university system include responsibilities that are executive and administrative in nature, such as “defining the distinctive mission of each constituent university” and “avoiding wasteful duplication of facilities or programs.” Art. IX, § 7(d), Fla. Const. The ability to set and appropriate for the expenditure of tuition and fees is of a wholly different nature than the executive and administrative functions delineated in the constitutional provision and therefore is not included in the meaning of “operate, regulate, control, and be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const.
We also review the ballot summary, because it is indicative of voter intent. See Benjamin v. Tandem Healthcare, Inc., 998 So.2d 566, 570 n. 3 (Fla.2008) (“[B]allot materials are one source from which the voters’ intent and the purpose of the amendment can be ascertained.”). Here, the ballot summary that accompanied the amendment and appeared on the ballot also indicated a grant of power that appears to be executive and administrative in nature. The ballot title and summary provided as follows:
Ballot title: Local trustees and statewide governing board to manage Florida’s university system
Ballot summary: A local board of trustees shall administer each state university. Each board shall have thirteen members dedicated to excellence in teaching, research, and service to community. A statewide governing board of seventeen members shall be responsible for the coordinated and accountable operation of the whole university system. Wasteful duplication of facilities or programs is to be avoided. Provides procedures for selection and confirmation of board members, including one student and one faculty representative per board.
In re Advisory Op. to Atty. Gen. ex rel. Local Trs., 819 So.2d at 727-28 (emphasis added). Nowhere in the ballot title or ballot summary does it indicate that the voters or framers intended for the Board of Governors to have authority over the setting of and appropriating for the expenditure of tuition and fees.
When this Court approved the amendment for placement on the ballot, we concluded that
the sole purpose of the proposed amendment is to create a governance of the state university system. The enumeration of the duties and responsibilities of the statewide board of governors and the local university boards of trustees is a necessary component of a single dominant plan that complies with the single-subject requirement. While the proposed amendment may affect more than one branch of government, we cannot say it substantially alters or performs *606 the functions of multiple branches of government....
Id. at 730. This Court also concluded that the amendment did not “substantially affect or change” article IX, section 1, of the Florida Constitution, id., which provides that the Legislature must make adequate provision for the establishment, maintenance, and operation of Florida’s universities. See art. IX, § 1(a), Fla. Const. (“Adequate provision shall be made by law ... for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.”). Accordingly, this Court concluded that the amendment did not violate the single-subject requirement. See In re Advisory Op. to Atty. Gen. ex rel. Local Trs., 819 So.2d at 730 (“Even though the proposed amendment interacts with [article IX, sections 1 and 3] by providing a two-tier governing system specifically for the state university system, it does not substantially affect or change either one_We therefore conclude that the only subject embraced in the proposed amendment is the two-tier system of governance of the state university system”). If the framers intended that the Board would have expansive authority over the setting of and appropriating for the expenditure of tuition and fees, neither the ballot summary nor the title indicated such an intent.
The Petitioners contend, however, that university funding has a dual nature: (1) tuition and fees from article III revenue paid by the recipients of education services; and (2) the state subsidy from article VII general revenue paid by taxpayers. The Petitioners therefore argue that the Legislature’s prior authority to control tuition and fees emanated solely from its article III authority to legislate and when voters passed the constitutional amendment creating the Board, this article III authority was necessarily transferred to the Board as a part of its power to “operate, regulate, control, and be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const.
In support, the Petitioners point to article III, section 1, of the Florida Constitution as having been the prior source of the legislative authority to control the setting and expenditure of university tuition and fees, rather than article VII. However, article III, section 1, entitled “Composition,” states only that the “legislative power of the state shall be vested in a legislature.” Moreover, article VII, sections 1(c) and 1(d), do not limit the Legislature’s power to raise revenue and make appropriations to monies raised by taxes, nor does the constitution indicate that fees for use of a state service fall outside of the Legislature’s power to raise revenue and appropriate funds. Further, this Court’s decisions regarding revenue and appropriations do not include this distinction. See, e.g., Children A, B, C, D, E, & F, 589 So.2d at 265 (stating that based on article VII, sections 1(c) and 1(d), “this Court has long held that the power to appropriate state funds is legislative and is to be exercised only through duly enacted statutes” (emphasis added)).
Rather, it has been long-established that the Florida Constitution “requires legislative appropriation or authorization for the use of any funds from whatever source by a public agency or official for a public purpose.” Advisory Op. to the Governor, 200 So.2d 534, 536 (Fla.1967). Although that statement was made with respect to provisions in the 1885 Florida Constitution, similar provisions, including an identical appropriations provision, appear in the current 1968 Florida Constitution. Id. (citing art. *607 IV, § 24[7] and art. IX, § 4,[8] Fla. Const. (1885), now art. IV, § 4(c),[9] and art. VII, § 1(c),[10] Fla. Const. (1968)). As cogently-explained by the First District, “[u]niver-sity tuition and fees are unquestionably state funds; they are collected by state universities for the use of their services and the monies collected are deposited into the State Treasury.” Graham, 75 So.3d at 318 (citing § 215.31, Fla. Stat. (2007)).
The Petitioners rely in part upon the fact that tuition and fees were deposited in a trust fund, stating that the “Legislature correctly ‘segregated’ the Article III funds from the Article VII funds throughout the legislative process,” including requiring the monies in the Education and General Student and Other Fees Trust Fund to be “segregated for a purpose authorized by law.” This distinction has no bearing on the nature of the funds or the Legislature’s constitutional authority over them, because, as explained by the First District below, “a trust fund is, at its essence, nothing more than an accounting tool used to segregate monies within the State Treasury.” Graham, 75 So.3d at 318-19 (citing § 215.32, Fla. Stat. (2007); Sec’y of State v. Milligan, 704 So.2d 152, 158 (Fla. 1st DCA 1997)). We therefore conclude that the Legislature’s pre-amendment control over the setting of and appropriating for the expenditure of tuition and fees derived from its article VII, section 1, revenue-raising and appropriations power.
Finally, we reject the Petitioners’ reliance on the constitutional systems of governance of universities established in other states, particularly Michigan, Minnesota, and California, as evidence of what the amendment at issue was intended to accomplish. The constitutional systems of university governance in Michigan,[11] Minnesota,[12] and California[13] are clearly different than that in Florida.
*608 CONCLUSION
For the foregoing reasons, we hold that the constitutional source of the Legislature’s authority to set and appropriate for the expenditure of tuition and fees derives from its power to raise revenue and appropriate for the expenditure of state funds. Nothing within the language of article IX, section 7, of the Florida Constitution indicates an intent to transfer this quintessentially legislative power to the Board of Governors. Accordingly, we conclude that the challenged statutes by which the Legislature has exercised control over these funds are facially constitutional and approve the First District’s decision.
It is so ordered.
QUINCE, LABARGA, and PERRY, JJ., concur.
LABARGA, J., concurs with an opinion.
POLSTON, C.J., and LEWIS and CANADY, JJ., concur in result.

. See §§ 1011.41, 1011.4106, and 1011.91, Fla. Stat. (2007); ch.2007-72, § 2, subsection 156, Laws of Fla.

. See art. V, § 3(b)(3), Fla. Const.

. See ch.2002-387, § 3(5)(a), Laws of Fla. (“Effective July 1, 2001: 1. The Board of Regents is abolished. 2. All of the powers, duties, functions, records, personnel, and property; unexpended balances of appropriations, allocations, and other funds; administrative authority; administrative rules; pending issues; and existing contracts of the Board of Regents are transferred by a type *600 two transfer, pursuant to s. 20.06(2), to the Florida Board of Education.”).

.See ch.2007-72, § 2, subsection 156, Laws of Fla. ("The appropriations provided in Specific Appropriations 156, 158, 159, and 160 from the Education and General Student and Other Fees Trust Fund are the only budget authority provided in this act for the 2007-2008 fiscal year to the named universities to expend tuition and fees that are collected during the 2007-2008 fiscal year and carried forward from the prior fiscal year and that are appropriated into local accounts pursuant to section 1011.4106, Florida Statutes. The expenditure of tuition and fee revenues from local accounts by each university shall not exceed the authority provided by these specific appropriations, unless approved pursuant to the provisions of chapter 216, Florida Statutes .... General revenue funds provided in Specific Appropriations 156 through 162 to each of the named universities are contingent upon each university complying with the tuition and fee policies established in the proviso language attached to Specific Appropriation 156, and with the tuition and fee policies for state universities included in Part II of chapter 1009, Florida Statutes.”).

. The Petitioners in this case are Bob Graham, Talbot “Sandy” D'Alemberte, Joan Ruffier, Bruce W. Hauptli, James P. Jones, Howard B. Rock, Eric H. Shaw, and Frederick R. Strobel.

. Although the Board was added as a party to the lawsuit in the trial court, it later filed a notice of voluntary dismissal in March 2010.

. Art. IV, § 24, Fla. Const. (1885) ("The Treasurer shall receive and keep all funds, bonds, and other securities, in such manner as may be prescribed by law, and shall disburse no funds, nor issue bonds, or other securities, except upon the order of the Comptroller countersigned by the Governor, in such manner as shall be prescribed by law.")

. Art. IX, § 4, Fla. Const. (1885) (“No money shall be drawn from the treasury except in pursuance of appropriations made by law.”).

. Art. IV, § 4(c), Fla. Const. (1968) ("The chief financial officer shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the state, and shall keep all state funds and securities.”).

. Art. VII, § 1(c), Fla. Const. (1968) (“No money shall be drawn from the treasury except in pursuance of appropriation made by law.”).

. See Mich. Const, art. VIII, § 5 (expressly giving each board of regents "general supervision of its institution and the control and direction of all expenditures from the institution's funds").

. See Minn. Const, art. XIII, § 3 (providing that "[a]ll the rights, immunities, franchises and endowments heretofore granted or conferred upon the University of Minnesota are perpetuated unto the university”); Minnesota v. Chase, 175 Minn. 259, 220 N.W. 951, 954 (1928) (explaining that under this provision, "the University, in respect to its corporate status and government, was put beyond the power of the Legislature by paramount law, the right to amend or repeal which exists only in the people themselves” (emphasis added)).

. See Cal. Const, art. 9, § 9(a) (providing that the University of California "shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services” (emphasis added)).